**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Micalyn Ford, Richard Ismach, Richelle Stroman, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br>v.<br><br>NRA Group, LLC d/b/a National Recovery Agency,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

For their Class Action Complaint, Plaintiffs, Micalyn Ford, Richard Ismach and Richelle Stroman, by and through their undersigned counsel, pleading on their own behalf and on behalf of all others similarly situated, state as follows:

**INTRODUCTION**

1. Plaintiffs, Micalyn Ford, Richard Ismach and Richelle Stroman ("Plaintiffs"), bring this class action for damages resulting from NRA Group, LLC d/b/a National Recovery Agency's ("NRA" or "Defendant") placement of debt collection text messages to Plaintiffs' cellular phones after Plaintiffs each requested in writing that NRA "STOP" sending such messages, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

2. NRA is a nationwide debt collector. As part of its debt collection operations, NRA bombards consumers with multiple debt collection text messages, even after the consumers ask NRA to "STOP" sending the messages.

3. Indeed, Plaintiffs each received debt collection text messages from NRA advising that "Top stop receiving text messages reply STOP." On April 15, 2022, Plaintiff Ford first messaged NRA "STOP," on June 9, 2022 Plaintiff Stroman messaged NRA "Stop," and on July

18, 2022, Plaintiff Ismach messaged NRA "STOP" but in each instances NRA ignored the requests and continued to send debt collection text messages to Plaintiffs thereafter.

4. Below are representative screenshots showing Plaintiff Ford's April 15, 2022, "STOP" requests and one of Defendant's post-STOP collection messages months later:







5. This is not the first time NRA has been sued for its illegal text messaging practice. On February 16, 2021, a different consumer filed a putative class action against NRA for continuing to send debt collection text messages after she messaged NRA "STOP," i.e., the same claims Plaintiffs bring here. *Chamberlain v. NRA Group, Inc.*, No. 1:21-cv-00281-JPW (M.D.

Pa., Feb. 16, 2021).[1] Yet despite being put on notice of its illegal conduct, NRA still ignores consumer's requests to "STOP" communicating with them, in violation of the FDCPA.

6. Plaintiffs seek relief for themselves and all others similarly situated for NRA's unlawful behavior.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because her claims arise under the federal Fair Debt Collection Practices Act. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

8. The Court has personal jurisdiction over NRA because NRA is a Pennsylvania company with a principal place of business located in this District.

9. Venue is proper in this District in the acts that give rise to Plaintiffs' claims – including but not limited to Defendant's sending of text messages to Plaintiffs – occurred within this District.

## PARTIES

10. Plaintiff Micalyn Ford ("Ford") is, and at all times mentioned herein was, an adult individual residing in Avon, Indiana.

11. Plaintiff Richard Ismach ("Ismach") is, and at all times mentioned herein was, an adult individual residing in Maugansville, Maryland.

12. Plaintiff Richelle Stroman ("Stroman," and together with Ford and Ismach, "Plaintiffs") is, and at all times mentioned herein was, an adult individual residing in Somerville, Massachusetts.

13. NRA is a Pennsylvania company with its principal place of business located at

[1] Undersigned counsel represent the plaintiff in *Chamberlain* as well. The Class Periods at issue in each case are distinct and do not overlap.

2491 Paxton Street, Harrisburg, Pennsylvania 17111.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

***Plaintiff Ford***

14. Plaintiff Ford incurred an alleged debt (the "Ford Debt") arising out of residential utilities, to Aqua Services Inc. - Illinois (the "Original Creditor").

15. The Ford Debt meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

16. Thereafter, the Original Creditor sold the Ford Debt to NRA or otherwise enlisted NRA to collect the Ford Debt on its behalf.

17. Within the last year, NRA began placing text messages to Plaintiff Ford's cellular telephone, number 815-XXX-5591, in an attempt to collect the Ford Debt.

18. The text messages provided the name of the Original Creditor and the alleged balance owed and stated that "We will use any information obtained from you to help collect the debt." In addition, the text messages provided NRA's name, address, and telephone number, and directed Plaintiff Ford to "send your payment to the address below" or to make a payment via a website.

19. The messages NRA sent to Plaintiff Ford were near-identical to one another and to messages that NRA sent to other consumers across the country, including Plaintiffs Ismach and Stroman.

20. The messages NRA sent to Plaintiff Ford – along with the messages NRA sent to other consumers – advised Plaintiff Ford "Reply STOP to end " or "To stop receiving text messages reply STOP."

21. Plaintiff Ford repeatedly messaged "STOP" to NRA in order to get it to stop sending her debt collection text messages, including on April 15, 2022, May 10, 2022, July 6, 2022 and July 12, 2022.

22. However, notwithstanding Plaintiff Ford's requests for NRA to "STOP," NRA continued to send debt collection text messages to Plaintiff Ford's cellular telephone demanding a payment towards the Ford Debt.

***Plaintiff Ismach***

23. Plaintiff Ismach incurred an alleged debt (the "Ismach Debt") arising out of medical services to Florida Hospital. (the "Original Creditor").

24. The Ismach Debt meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

25. Thereafter, the Original Creditor sold the Ismach Debt to NRA or otherwise enlisted NRA to collect the Ismach Debt on its behalf.

26. Within the last year, NRA began placing text messages to Plaintiff Ismach's cellular telephone, number 954-XXX-0930, in an attempt to collect the Ismach Debt.

27. The text messages provided the name of the Original Creditor and the alleged balance owed. In addition, the text messages provided NRA's name, address, and telephone number, and stated they were attempts to collect the Ismach Debt.

28. Below are representative text messages that Defendant sent to Plainiff Ismach:







29. The messages NRA sent to Plaintiff Ismach were near-identical to one another and to messages that NRA sent to other consumers across the country.

30. The messages NRA sent to Plaintiff Ismach – along with the messages NRA sent to other consumers – advised "To stop receiving text messages reply STOP."

31. Plaintiff Ismach messaged "STOP" to NRA on July 18, 2022, in order to get it to stop sending him debt collection text messages.

32. However, notwithstanding Plaintiff Ismach's request for NRA to "STOP," NRA continued to send debt collection text messages to Plaintiff Ismach's cellular telephone demanding a payment towards the Ismach Debt.

***<u>Plaintiff Stroman</u>***

33. Plaintiff Stroman incurred an alleged debt (the "Ismach Debt") arising out of medical services to National Grid NE (the "Original Creditor").

34. The Stroman Debt meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

35. Thereafter, the Original Creditor sold the Stroman Debt to NRA or otherwise enlisted NRA to collect the Stroman Debt on its behalf.

36. Within the last year, NRA began placing text messages to Plaintiff Stroman's cellular telephone, number 617-XXX-8916, in an attempt to collect the Stroman Debt.

37. The text messages provided the name of the Original Creditor and the alleged balance owed. In addition, the text messages provided NRA's name, address, and telephone number, and stated they were attempts to collect the Stroman Debt.

38. The following page contains a representative text message from NRA:




39. The messages NRA sent to Plaintiff Stroman were near-identical to one another and to messages that NRA sent to other consumers across the country.

40. The messages NRA sent to Plaintiff Stroman– along with the messages NRA sent to other consumers – advised "To stop receiving text messages reply STOP."

41. Plaintiff Stroman messaged "Stop" to NRA on June 9, 2022 and June 20, 2022, in order to get it to stop sending her debt collection text messages.

42. However, notwithstanding Plaintiff Stroman's request for NRA to "STOP," NRA continued to send debt collection text messages to Plaintiff Stroman's cellular telephone demanding a payment towards the Stroman Debt.

***Plaintiffs were injured by the post-STOP messages***

43. Plaintiffs' time was wasted tending to NRA's text messages sent after they expressly asked NRA to "STOP" messaging their respective cellular telephones.

44. Moreover, NRA's post-STOP messages annoyed, frustrated, and angered Plaintiffs.

45. Plaintiffs' receipt of Defendant's unauthorized debt collection messages drained Plaintiffs' phone batteries and caused Plaintiffs additional electricity expenses and wear and tear on their phones and batteries.

## CLASS ACTION ALLEGATIONS

### A. The Class

46. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all others similarly situated.

47. Plaintiffs represent, and are members of the following class:

> **All persons within the United States to whom NRA or its agent/s and/or employee/s sent a debt collection text message to said person's cellular telephone within the one-year period preceding the filing of the Complaint, after said person had previously messaged "stop" in any combination of upper or lowercase letters or a stop directive which would be identified as such to NRA.**

48. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the Class but believe the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

**B. Numerosity**

49. Upon information and belief, Defendant has placed debt collection text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States, after receiving messages asking it to "STOP." The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

50. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the class members is a matter capable of ministerial determination from Defendant's records.

**C. Common Questions of Law and Fact**

51. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

a. Whether Defendant sent debt collection text messages to Plaintiffs and Class members' cellular telephones after being advised to 'stop' sending such messages;

b. Whether Defendant's practice of sending debt collection text messages to consumers after being asked to 'stop' doing so violates the FDCPA;

c. Whether Defendant is liable for damages, and the amount of such damages; and

d. Whether Defendant should be enjoined from such conduct in the future.

52. The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendant routinely places debt collection text messages to telephone numbers assigned to cellular telephone services after being asked to 'stop' is accurate, Plaintiffs and the Class

members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D. Typicality**

53. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E. Protecting the Interests of the Class Members**

54. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

**F. Proceeding Via Class Action is Superior and Advisable**

55. A class action is the superior method for the fair and efficient adjudication of this controversy. Congress specifically provided, at 15 U.S.C. 1692k, for the commencement of class actions as a principal means of enforcing the FDCPA. In addition, the interest of Class members in individually controlling the prosecutions of separate claims against NRA is small because it is not economically feasible for Class members to bring individual actions.

56. Absent a class action, most members of the class would find the cost of litigating their claims to be prohibitive and, therefore, would have no effective remedy at law.

57. The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

58. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

59. Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant and other debt collectors. Conversely, adjudications with respect to individual class members would be dispositive of the interest of all other class members.

60. The amount of money at issue is such that proceeding by way of a class action is the only economical and sensible manner in which to vindicate the injuries sustained by Plaintiffs and the other members of the Class.

## COUNT I
## Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(c)

61. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

62. The FDCPA, 15 U.S.C. § 1692c(c) provides that "If a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—(1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy."

63. Plaintiffs and members of the putative class each notified Defendant that they wished NRA to cease sending them further communications when they messaged NRA 'stop' but NRA nonetheless proceeded to send Plaintiffs and members of the putative class subsequent debt collection text messages.

64. Moreover, Defendant's subsequent post-Stop messages sought to collect consumers

debts and demanded payments from Plaintiffs and members of the putative class; the messages did not advise that Defendant's further efforts were being terminated nor did they state that Defendant may invoke specified remedies which are ordinarily invoked by Defendant or notify Plaintiffs or members of the putative class that Defendant intended to invoke a specified remedy.

65. By virtue of the foregoing, Plaintiffs are entitled to recover damages as prayed for herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant Plaintiffs and the Class the following relief against Defendant:

1. Actual and statutory damages as provided under the FDCPA, pursuant to 15 U.S.C. § 1692k;
2. An award of attorneys' fees and costs to counsel for Plaintiffs pursuant to 15 U.S.C. § 1692k(a)(3); and
3. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: March 22, 2023

Respectfully submitted,
By /s/ *Jody B. Burton*
Jody B. Burton, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
E-mail: jburton@lemberglaw.com
Attorneys for Plaintiffs